CRITICARE SYSTEMS, INC., Plaintiff-Respondent-Cross Appellant,†

v.

SENTEK, INC., Defendant-Appellant-Cross Respondent,

Robert H. RICCIARDELLI, and Robert W. Sommer, Defendants-Cross Respondents.

Court of Appeals

*No. 89–1636. Oral argument September 4, 1990.—Decided December 5, 1990.*

(Also reported in 465 N.W.2d 216.)

†Petition to review denied.

640

On behalf of the defendant-appellant-cross respondent, there were briefs by *Charles P. Graupner* and *Paul F. Linn* of *Michael, Best & Friedrich* of Milwaukee. There was oral argument by *Charles P. Graupner.*

On behalf of the plaintiff-respondent-cross appellant, there were briefs by *Richard P. Carr* and *R. Timothy Muth* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee. There was oral argument by *R. Timothy Muth.*

On behalf of the State of Wisconsin, Commissioner of Securities, there was an amicus curiae brief by *Walter H. White, Jr.,* Commissioner of Securities, and *William C. Lloyd,* Legal Services Division.

Before Nettesheim, P.J., Brown and Scott, JJ.

BROWN, J.   We hold that the remedy elected by Sentek, Inc., the victim of securities fraud in this case, bound the trial court to enforce sec. 551.59(7), Stats., upon Criticare Systems, Inc., the perpetrator of the fraud. Thus, because Sentek received recission and restitution rather than breach of contract damages, Criticare is prohibited by statute from itself seeking damages upon the contract. We also allow attorneys' fees and interest to Sentek.

On the cross-appeal of Criticare, we affirm the partial summary judgment against Criticare regarding a covenant not to compete because this claim emerged from the contract involving securities and is thus also barred by sec. 551.59(7), Stats.

Because this case was tried before a jury, we recite the facts in a light most favorable to the verdict. *Hareng v. Blanke,* 90 Wis. 2d 158, 162, 279 N.W.2d 437, 439 (1979). Sentek and Criticare executed an agreement by which Sentek agreed to design, develop and transfer property rights in a medical monitoring component, in

particular, a carbon dioxide bench and water trap which would remove moisture contained in a patient's breath before it was analyzed. In return, Criticare agreed to pay Sentek $4000 plus expenses each month. As an incentive, Criticare also agreed to "make stock available" to the extent of 30,000 shares.

Criticare's president, Gerhard Von der Ruhr, represented to Sentek's president, Robert H. Ricciardelli, that Sentek's compensation would be in the form of a stock grant. He did not advise Ricciardelli that he viewed stock *options* as tantamount to making stock "available."

Subsequently, in preparation for an initial public offering of its stock, Von der Ruhr approached Ricciardelli and asked him to sign a letter confirming that the Criticare shares promised to Sentek would be options. Von der Ruhr explained that the public offering was being delayed until Ricciardelli signed the letter, that people were waiting at the printers that very hour for word that he had signed the letter, and that such a "clarification" was required by Criticare's underwriters, securities lawyers and securities laws. Von der Ruhr assured Ricciardelli that he would make stock available and do everything in his power to make sure that Sentek got the promised shares. Ricciardelli signed the letter.

In fact, no one was waiting at the printers. Securities laws do not require the signing of a "clarification." Further, at the time of Von der Ruhr's representation, Criticare had already enacted an option plan with regard to Sentek. This plan was effectuated when Criticare gave Sentek stock options, not stock. The options were for one-fourth of the promised shares and required a hefty payment for the exercise of the options. Further, the stock issued would have been subject to a two-year holding requirement.

642

Sentek eventually refused to continue working on the monitor or to turn over any related documentation or material concerning the monitor's design and development. Criticare sued Sentek claiming lost profits and business opportunities. It also sought the documentation and materials. Criticare also sued Ricciardelli and Robert W. Sommer, claiming that they violated a non-compete clause. Sentek countersued claiming, *inter alia,* a violation of the state securities act.

The jury found that both Criticare and Sentek had breached the contract and awarded damages to each. Additionally, the jury found that Sentek negligently misrepresented certain facts to Criticare, but found Criticare fifty percent contributorily negligent for relying on the misrepresentations and awarded damages on this issue. Finally, the jury found that Criticare knowingly made untrue statements of material fact to Sentek or omitted stating material facts concerning the sale of stock. It then assessed damages for that.

In motions after verdict, Sentek asked that all jury awards to Criticare be set aside. It argued that because the jury found that Criticare was guilty of fraud concerning the stocks, the state's anti-fraud provisions apply. Specifically, Sentek cited sec. 551.59(7), Stats., which states:

> No person who has made or engaged in the performance of any contract in violation of this chapter or any rule or order hereunder, or who has acquired any purported right under any contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.

Sentek asserted that all of Criticare's claims were founded upon a contract involving securities fraud.

Sentek concluded that Criticare, as the guilty party, was statutorily barred from asserting any claims transpiring from this contract. Sentek further sought attorneys' fees and interest pursuant to sec. 551.59(1)(a).

The trial court denied Sentek's motions. It apparently reasoned that the major part of the lawsuit involved a promise to pay in return for performing work. Because the exchange of securities was only peripherally related to this contractual debate, invoking sec. 551.59(7), Stats., was found to be unwarranted. The trial court applied the same reasoning in declining to allow attorneys' fees and interest.

We assume that the facts supporting the jury verdict are true. When we seek to apply the known facts to the applicable law, we are determining a question of law. *Boles v. Milwaukee County,* 150 Wis. 2d 801, 813, 443 N.W.2d 679, 683 (Ct. App. 1989). We note that we have received an *amicus* brief from the State of Wisconsin Commissioner of Securities. Both parties were allowed to respond to the brief during oral arguments.

Prior to beginning our analysis, it is important to explain what is not at issue in this case. The jury found all of the elements for a securities fraud violation pursuant to sec. 551.41, Stats. Criticare did not object to a jury instruction regarding securities fraud. Nor did it later ask that the jury's finding be set aside by the trial court following verdict. Further, it did not raise the sufficiency of evidence on the sec. 551.41 violation as an issue until its reply brief on appeal—too late. *See Schaeffer v. State Personnel Comm'n,* 150 Wis. 2d 132, 144, 441 N.W.2d 292, 297 (Ct. App. 1989). So, we will assume that Criticare violated the following language of the statute:

**Sales and purchases.** It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

(1)  To employ any device, scheme or artifice to defraud;

(2)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3)  To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Section 551.41.

The focus of Criticare's argument is that the principal object of the contract was the development of a product, not the sale of a security. Criticare asserts that the majority of the contract had nothing whatsoever to do with securities. Thus, where the allegedly illegal portion of the contract is separate and distinct from the remaining provisions of the contract, the remaining portions of the contract can be enforced. Criticare concludes that the only time sec. 551.59(7), Stats., should be invoked to prohibit a party from maintaining any action on the contract is when the contract, in its whole, violates sec. 551.41, Stats. We will deal later with the attorneys' fees and interest issues.

In support of its argument, Criticare directs us to sec. 29(b) of the Securities and Exchange Act of 1934, 15 U.S.C. sec. 78cc(b), which it claims is closely analogous to our sec. 551.59(7), Stats. Section 29(b) reads in part:

Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder . . . shall be void . . . as regards the rights of any person who, in violation of any such provision . . .

645

made or engaged in the performance of any such contract.

Criticare observes that we should closely follow federal cases interpreting federal law which our state has copied to a large extent. It then cites *Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc.*, 496 F.2d 1255 (4th Cir.), *cert. denied*, 419 U.S. 1023 (1974), and urges that the holding there should be adopted in this case. Occidental Insurance agreed to sell all of its outstanding shares in a subsidiary to Pat Ryan Associates. Occidental sued Ryan for breach of contract. Ryan counterclaimed citing, *inter alia*, securities law violations. In particular, Ryan claimed that Occidental misrepresented the subsidiary's capitalization. A jury found the existence of securities violations as did the jury in this case. After trial, the buyer, like Sentek here, claimed that the jury's finding of a securities law violation barred the seller from recovering on its breach of contract claims. The court wrote:

> Section 29(b) merely makes explicit that which is implicit, i.e., the recognition of the doctrine of illegal bargains in the application of the securities laws.
>
> In deciding how to fashion a remedy in the area of illegal bargains, the type and degree of illegality become highly important factors. The violation of the securities laws in this case did not involve a contract that was illegal per se. Nor did it involve a criminal act. Here the illegality involved a matter collateral to the agreement to sell stock, i.e., the misrepresentations and nondisclosures by Occidental. Moreover, [Ryan] has an ample variety of remedies, both legal and equitable, in order to vindicate the wrong done to it and the public in general . . .. [I]t would not advance the purposes of the securities laws to permit [Ryan] to obtain an unexpected windfall . . ..

646

*Occidental,* 496 F.2d at 1266–67 (citations and footnotes omitted).

Criticare argues that the holding allows the use of sec. 29(b) only in those situations where the whole bargain violates the Act. Criticare maintains that sec. 29(b) is to be used only when public policy requires that any event emanating from the transaction be deemed unenforceable. Where the illegality does not permeate the entire contract, the prophylactic provision should not be called into play.

Criticare cites *Occidental* further to say that unless the public interest requires, courts should be reluctant to nullify a contract which has been executed, and this is especially true where the parties have other remedies at their disposal which will produce an equitable result.

Criticare concludes that sec. 559.59(7), Stats., like sec. 29(b), is a public policy-generated statute that should not be used unless the whole of the bargain strikes at the heart of the securities fraud law.

We acknowledge that sec. 551.59(7), Stats., is fairly analogous to sec. 29(b). Therefore, we have closely scrutinized the federal cases construing sec. 29(b). We also observe, however, that we are not bound by federal cases when construing a state statute. *Gerol v. Arena,* 127 Wis. 2d 1, 9, 377 N.W.2d 618, 622 (Ct. App. 1985). We analyze the federal cases in the following way.

The language of sec. 29(b), on its face, voids the contract as to the wrongdoer. One federal court judge thought this unduly harsh because the wrongdoer may have performed on the contract despite the fraud. Quoting him, the *Occidental* court wrote: "There has been a conspicuous lack of judicial enthusiasm for the doctrine [of illegal bargains being read into sec. 29(b)] when there has been performance by the violator." *Occidental,* 496

647

F.2d at 1266 (emphasis omitted; quoting *Pearlstein v. Scudder & German,* 429 F.2d 1136, 1149 (2d Cir. 1970) (Friendly, J., dissenting)).

The federal courts therefore have read an equitable exception into sec. 29(b). The equitable exception is that the contract is not void due to securities fraud either in its making or execution; rather, the contract is voidable at the option of the innocent party. If the innocent party chooses to void the contract, then that innocent party is essentially electing recission and restitution as the remedy. That party cannot also seek damages on the contract. To do so would be the same as asserting that the contract is void and not void at the same time.

As the *Occidental* court stated:

> Section 29(b) is more properly viewed as an adjunct to the other remedies provided by the Securities Exchange Act of 1934 and . . . it should be read as complementing those remedies available to injured parties and not as being antagonistic.

*Occidental,* 496 F.2d at 1266. The courts make this harmonization to avoid a conflict. We quote *Occidental* again:

> [I]nnocent purchasers . . . are given definite remedies inconsistent with the idea that every contract having relation to [fraudulent] sales of [securities] is absolutely void.

*Id.* (quoting *A.C. Frost & Co. v. Coeur D'Alene Mines Corp.,* 312 U.S. 38, 43 (1941)).

We interpret this language to mean that the statute does not give an innocent party a remedy presuming the existence of a contract and, at the same time, allow use of the statute to assume that the contract does not exist. Rather, an innocent party has the option to declare

whether or not the contract exists by virtue of an election of remedies. If the innocent party does not elect to void the contract, he or she may seek damages for breach of contract. However, it would be a windfall for the innocent party if the contract were asserted by the innocent party to be void as to the wrongdoer, but not void as to the innocent party itself.

Applying this analysis to our statute, sec. 551.59(7), Stats., prevents a wrongdoer from asserting a right under the contract. If the statute is invoked, it is because the contract has been declared void. To invoke the statute but then to say in the same breath that there is a cause of action for the innocent party based on a valid contract would be an unreasonable interpretation of the statute.

Our review of ch. 551, Stats., reveals a variety of remedies similar to sec. 29(b) which are available to the innocent party. We are persuaded by the rationale of the federal courts. Thus, we hold that sec. 551.59(7), Stats., is operative only when the innocent party elects the remedy of recission and restitution and eschews the breach of contract remedy.

Here, although denominated breach of contract, what the jury awarded Sentek was not damages based on the affirmation of the contract, but a restoration of the *status quo ante, i.e.,* the return of the value of the consideration given by Sentek, less the value of what Sentek received from Criticare. Therefore, sec. 551.59(7), Stats., is properly invoked.

■

To the extent that *Occidental* can be read to espouse a second rationale—that sec. 29(b) is inoperative unless the whole contract violates the securities fraud act *per se*—we reject it. We are bound to interpret unambiguous statutes literally. *See Boles,* 150 Wis. 2d at 813, 443 N.W.2d at 683. The view that a contract must be found

649

to be illegal *per se* before the statute can operate is not found in the statutes. To adopt that rationale would be to leave the use of the statute to the discretionary whim of the courts on a case-by-case basis. We do not believe that the legislature intended that result.[1]

■

We conclude that sec. 551.59(7), Stats., operates to prevent Criticare from maintaining a cause of action based upon the contract. Therefore, all of Criticare's jury awards based on the contract must be stricken. Further, its cross-appeal claiming a violation of the restrictive covenant must fail. The trial court granted summary judgment against Criticare on this issue prior to trial, based on different reasoning. We affirm that grant of summary judgment.

Regarding attorneys' fees, Criticare claims that the payment of fees is discretionary with the trial court. It maintains that the trial court did not abuse its discretion in denying attorneys' fees where the fraud was peripheral to the main contract action. Review of sec. 551.59(1)(a),

---

[1]Even if we were to read *Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc.,* 496 F.2d 1255 (4th Cir.), *cert. denied,* 419 U.S. 1023 (1974), broadly as Criticare asks us to, we would conclude that the whole bargain was permeated by the securities fraud. It may well have been that the primary reason for the contract, in Criticare's opinion, was the development of a product, but, from Sentek's viewpoint, Criticare was in effect "selling" securities in return for services provided. Criticare's "consideration" was Sentek's "principal object." Therefore, the securities fraud was not a fringe matter. The contract was for the sale of securities. Sentek reasonably could believe that it was getting stock in return for developing the product; if the product sold well, it is reasonable to believe the stock would rise; thus, Sentek's incentive to produce a product that marketed well was based upon its belief that it was to receive stock, not an option to buy stock. The stock was the focus of the whole agreement.

Stats., shows that Criticare is wrong. The statute reads in part:

> The person purchasing the security may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate under s. 138.04 from the date of payment, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the person no longer owns the security . . ..

*Id.* The statute gives the innocent party the option of suing for recission and restitution or for damages. If the former, the innocent party may also sue to recover attorney's fees.

We acknowledge that the statute is facially ambiguous about whether the trial court is mandated to award attorney's fees. The statute surely says that a party may sue for attorney's fees, but it does not say that the trial court must award the fees. We therefore turn to the subject matter, scope, history and object to be accomplished to assist in our interpretation. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 420, 405 N.W.2d 354, 363 (Ct. App. 1987).

The intent was to provide for enforcement of state securities laws largely by civil suits brought by citizens. 3 Loss, *Securities Regulation,* 1631, 1643 (1961). Inadequate budgets and uneven enforcement of Blue Sky laws make civil liability the only really effective sanction. *Id.* at 1631. We conclude that the award of reasonable attorney's fees encourages private enforcement of ch. 551, Stats. If a securities violation is found to exist, attorney's fees therefore are mandated.

651

This analysis also holds true for the interest issue raised by Criticare. While Criticare claims that interest was considered by the jury as part of its award, it is not a jury's determination to make, but the court's. Besides, there is nothing in the record to support Criticare's contention. We reverse the trial court's denial of attorneys' fees and interest.

We remand the attorneys' fees issue to the trial court to assess the reasonableness of the fees.

*By the Court.*—Judgment reversed and cause remanded; order affirmed.