4 F.3d 521
 26 Fed.R.Serv.3d 1426
 MIDWEST COMMERCE BANKING COMPANY,
Plaintiff-Counter-Defendant, Appellee,
v.
ELKHART CITY CENTRE,
Defendant-Counter-Plaintiff-Third-Party-Plaintiff, Appellant,
v.
James V. WOODSMALL; Warrick, Weaver & Boyn; and Marla
Unger, Third-Party-Defendants, Appellees.
 No. 92-2966.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 2, 1993.
Decided Sept. 9, 1993.
 
 Paul E. Becher (argued), Karla O. Boresi, Barnes & Thornburg, Elkhart, IN, Daniel F. Gosch, Detroit, MI, for Midwest Commerce Banking Co.
 Joseph C. Niebler (argued), Scott J. Hutchison, Niebler & Muren, Brookfield, WI, for Elkhart City Centre.
 G. Ronald Heath, Ronald G. Sentman, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, IN, for James V. Woodsmall and Warrick, Weaver & Boyn.
 Paul E. Becher, Karla O. Boresi, Barnes & Thornburg, Elkhart, IN, William I. Kohn, Michael B. Watkins, Barnes & Thornburg, South Bend, IN, for Marla Unger.
 Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 POSNER, Circuit Judge.
 
 
 1
 A bankrupt partnership, Elkhart City Centre, appeals the dismissal, for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), of its common law fraud action against a bank (Midwest Commerce) and a law firm (Warrick, Weaver & Boyn). There is more to the case but nothing else that bears on our decision. The defendants argue that if we disagree with the district judge's pleading ground we should decide the case in their favor on the merits. We do, and shall. Reed v. AMAX Coal Co., 971 F.2d 1295, 1298 (7th Cir.1992) (per curiam).
 
 
 2
 In 1979 Elkhart had borrowed $4.8 million in a deal orchestrated by the defendant bank to develop a hotel and convention center in Elkhart, Indiana. The loan was secured by bonds issued by Elkhart. By 1982 Elkhart was in default and that year it negotiated with the bank an amended loan agreement under which the bondholders, for whom the bank was acting as trustee, agreed to forgive the default. The agreement recited that it would take effect only if all the bondholders signed it. One of them, Henkin, for unexplained reasons did not sign. Elkhart's lawyer requested from the bank written confirmation that all the bondholders had signed. The bank failed to mail the confirmation until 1990. Yet in 1982 Elkhart, even though it had not obtained the written confirmation, had represented to several investors to whom it sold limited partnerships in order to raise more capital that the revised loan agreement was in effect. Elkhart claims that the bank knew that Henkin had not signed the agreement but concealed this knowledge from Elkhart in a "cover up" that culminated when in 1990 Henkin finally signed the 1982 revised agreement but without dating his signature, so that it looked as if he had signed it back in 1982. The defendant law firm is alleged to have participated in the fraud by failing from 1982 to 1990 to tell Elkhart that Henkin had not signed.
 
 
 3
 Eventually Elkhart defaulted once again and this time declared bankruptcy, listing the limited partners as creditors who had claims that Elkhart would not dispute. The limited partners had filed no proofs of claim in bankruptcy against Elkhart and made no demands upon Elkhart for payment, but not much significance can be attached to these facts; having been listed by the debtor as creditors with undisputed claims, the limited partners were not required to file proofs of claim. 11 U.S.C. Secs. 521(1), 1111(a).
 
 
 4
 The district judge should not have dismissed the entire suit on the basis of Rule 9(b). In particular he should not have allowed the defendant law firm to persuade him that the complaint had to allege not only that the firm had failed to reveal Henkin's failure to sign to Elkhart but also that it had had a duty to make such a disclosure to Elkhart. Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990); see also Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 682-83 (7th Cir.1992). The plaintiff's theory of the case is tested by a motion to dismiss for failure to state a claim (Rule 12(b)(6)), in which the law firm could have argued that since it had no duty to disclose Henkin's failure to sign, Elkhart had no claim against it.
 
 
 5
 The complaint adequately alleges the fact that the law firm had failed to reveal that Henkin had not signed the revised loan agreement and the time period during which that failure deceived Elkhart. Whether the failure is actionable may or may not depend on whether the law firm had a duty--other than the duty everyone has to avoid deliberately making misleading statements or omissions--to disclose a fact that, the law firm argues, was as accessible to Elkhart as to the firm. The firm points out that it had no fiduciary relationship with Elkhart. It was the bank's lawyer rather than Elkhart's and the bank as an imperiled creditor was the adversary of its debtor. All Rule 9(b) required, however, was that Elkhart set forth the date and content of the statements or omissions that it claimed to be fraudulent. Elkhart was not required to go further and allege the facts necessary to show that the alleged fraud was actionable. Uni*Quality v. Infotronx, 974 F.2d 918, 923 (7th Cir.1992); Bankers Trust Co. v. Old Republic Ins. Co., supra, 959 F.2d at 683-84. That might entail allegations about the parties' relationship, given the (dubious) suggestion that the fraud here may have consisted in the abuse of a relationship that created a duty to speak--the wrong that is sometimes called "constructive fraud," Hardy v. South Bend Sash & Door Co., 603 N.E.2d 895, 901 (Ind.App.1992); Block v. Lake Mortgage Co., 601 N.E.2d 449, 451 (Ind.App.1992); it would certainly entail allegations demonstrating the falsity of any representations or omissions, Elkhart's reliance on the defendant's misrepresentations or omissions, and the reasonableness of that reliance. None of that was required.
 
 
 6
 The defendants, moving from procedure to substance, also are wrong to argue that omissions are actionable only if a defendant has a duty to the plaintiff that arises from a fiduciary or other special relationship. Omissions are actionable as implied representations when the circumstances are such that a failure to communicate a fact induces a belief in its opposite. Kelley v. Fisk, 110 Ind. 552, 11 N.E. 453, 454 (1887); Peoples Trust & Savings Bank v. Humphrey, 451 N.E.2d 1104, 1112 (Ind.App.1983); McNair v. Public Savings Ins. Co., 88 Ind.App. 386, 163 N.E. 290, 293-94 (1928); Vaughn v. General Foods Corp., 797 F.2d 1403, 1414 (7th Cir.1986) (applying Indiana law); Central States Stamping Co. v. Terminal Equipment Co., 727 F.2d 1405, 1409 (6th Cir.1984); United States Fidelity & Guaranty Co. v. Black, 412 Mich. 99, 313 N.W.2d 77, 89 (1981) (a case factually much like this one). The circumstances include a situation such as this where the omitted fact (that a necessary signature had not been obtained) is basic to the transaction, so that if the nondiscloser treats the transaction as valid the other party will naturally assume that all its conditions have been fulfilled. Restatement (Second) of Torts Sec. 551(e); Crum v. AVCO Financial Services of Indianapolis, Inc., 552 N.E.2d 823, 830 n. 6 (Ind.App.1990).
 
 
 7
 The defendants have, however, a sound ground for defending the judgment dismissing the suit. There can be no tort without an injury (at least a threatened injury, if prospective relief is being sought, but that is not an issue here). Niehus v. Liberio, 973 F.2d 526, 531-32 (7th Cir.1992). What this means in a fraud case is that the plaintiff must show that, had it not been for the fraud, he would have been spared an injury and thus would be better off. Stromberger v. 3M Co., 990 F.2d 974, 976-78 (7th Cir.1993). He must compare the situation in which he found himself after the fraud to the situation he would have been in had there been no fraud. The fraud alleged here is the concealment of the fact that Henkin had failed to sign the revised loan agreement in 1982. We must consider what would have happened if this fact had not been concealed. There are two possibilities. One is that either Elkhart or one or more of the bondholders would have refused to go forward with the agreement unless Henkin signed, and he would have signed. This is the likelier possibility, since Henkin later did sign, apparently with the intention of making his signature retroactive to the original agreement, though at argument Elkhart's lawyer told us that Henkin now believes that he was tricked into signing the agreement. If Henkin had signed it at the outset, the revised agreement would have been put into effect, just as it was, and eventually Elkhart would have defaulted, just as it did, and would be in the same position today as it is--but for the fact that the limited partners could have no possible claim against Elkhart. They would just have been unlucky investors. The other possibility is that Henkin would have refused to sign and the revised agreement would have fallen through. Then Elkhart presumably would have defaulted back in 1982, since the revised loan agreement was the device agreed on by all concerned (possibly excepting Henkin himself) to stave off a default. We cannot see how Elkhart would be better off today had it declared bankruptcy back in 1982--more to the point, Elkhart gives us no reason to believe it would be better off under this alternative history--except that, as before, it would have been spared potential liability to the limited partners.
 
 
 8
 Investors are the first to be wiped out in a bankruptcy; creditors retain claims against the bankrupt that usually have a positive value, although in the case of unsecured creditors that value is often small. The investors who bought limited partnerships in Elkhart in 1982 might, by virtue of having been induced to purchase them by the representation that the bondholders had forgiven Elkhart's default, have a claim of some sort against Elkhart, notwithstanding the latter's innocence of the deception. Elkhart's action in listing in its bankruptcy filings the limited partners as creditors is some indication of this. What might their claim be? Under Wisconsin law, which the parties agree (and that's good enough for us, Credit Alliance Corp. v. Campbell, 845 F.2d 725, 727 (7th Cir.1988)) governs Elkhart's liability to the limited partners though not the defendants' liability to Elkhart (a matter of Indiana law), the limited partners may have had either a statutory or a common law right to rescind the limited partnerships because of Elkhart's misrepresentation, innocent though it was, even nonnegligent as it may have been (or may not have been--for Elkhart made the fatal representation without written confirmation in hand that all the bondholders had in fact signed, and maybe this was careless). Wis.Stat. Secs. 551.41(2), 551.59(1)(a); Whipp v. Iverson, 43 Wis.2d 166, 168 N.W.2d 201 (1969). If the limited partnerships were rescinded, the quondam limited partners would be entitled to restitution of the money they had paid for them. Criticare Systems v. Sentek, 159 Wis.2d 639, 465 N.W.2d 216, 221 (App.1990). This entitlement would make them creditors of Elkhart.
 
 
 9
 All that follows from this, however, is that Elkhart, rather than having listed the limited partners as creditors having indisputable claims, should be arguing that Henkin's retroactive signing cured the defect in the revised loan agreement, made it valid from the start, and thus knocked out any basis for the limited partners to challenge the validity of the limited partnerships and hence their status as investors. Only if that argument failed could Elkhart (which is to say Elkhart's unsecured creditors, because Elkhart is a debtor in possession) be hurt by the alleged concealment of the fact that Henkin had not signed the revised loan agreement at the outset. The inference seems inescapable that Elkhart listed the limited partners as creditors in the bankruptcy proceeding in order to set the stage for suing the bank and the bank's law firm for fraud. For the belatedness of Henkin's signature should not have cast a serious cloud over the validity of the revised loan agreement. So far as appears, he merely forgot to sign at the outset, and his later signature was intended to correct a harmless mistake, though now of course he may repent his decision. No one was prejudiced by--no one changed his position in reliance on--this omission of Henkin's that no one was aware of. It would be different if the bondholders were seeking to rescind the revised loan agreement and enforce the old defaults and if this somehow hurt the limited partners. Maybe they are trying to rescind--we mentioned the representation by Elkhart's lawyer that Henkin wants to rescind his signature--but Elkhart has made no record on the question.
 
 
 10
 Supposing that the limited partners do have good claims, although no one has yet been able to articulate a possible basis for them, we would have to reconsider our belief that the present suit is completely groundless. Instead it would be premature. Damages are for people who have been harmed. You cannot seek an award of damages for a fraud, therefore, before the fraud has harmed you, Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir.1990); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106-07 (2d Cir.1988), or seek indemnity (another way to characterize Elkhart's suit) without any basis for supposing that there will ever be any indemnifiable loss. A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Corp., 559 F.2d 928, 932-33 (4th Cir.1977). Even if there has been harm, if it cannot yet be quantified, a damages suit may be premature. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). There would have been no prejudice to Elkhart from waiting to sue until it was harmed, since the statute of limitations would not begin to run until then--in fact would not begin to run until Elkhart discovered that it had been harmed. Ind.Code Ann. Sec. 34-1-2-1; Wehling v. Citizens National Bank, 586 N.E.2d 840, 843 (Ind.1992); INB National Bank v. Moran Electric Service, Inc., 608 N.E.2d 702, 708 (Ind.App.1993). Elkhart's decision to acknowledge nonexistent claims against it could not, unless made in good-faith and reasonable settlement of actual or impending litigation, be an injury that would sustain a tort suit. It would be a self-inflicted injury.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Hon. William H. Timbers of the Second Circuit, sitting by designation