**BANKCARD AMERICA, INC., Plaintiff,**

v.

**UNIVERSAL BANCARD SYSTEMS, INC., Defendant.**

**UNIVERSAL BANCARD SYSTEMS, INC., a New York corporation, Counter–Plaintiff,**

v.

**BANKCARD AMERICA, INC., an Illinois corporation, American Bankcard Systems, Inc., an Illinois corporation, Samuel Buchbinder, and Paul Alperstein, Counter–Defendants.**

**No. 93 C 1969.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 2, 1995.

George W. Hamman, Aimee M. Devereux, Hamman & Benn, Chicago, IL, for Bankcard America, Inc.

Andrey Bohdan Filipowicz, Michael Hugh Burny, Andrey B. Filipowicz & Associates, Chicago, IL, Forrest L. Ingram, Chicago, IL, for Universal Bancard Systems, Inc.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case is before the Court on the Plaintiff/Counter–Defendants' ("Buchbinder's") [1] motion to dismiss Count II of the Defendant/Counter–Plaintiff's ("UBS'") Amended Counterclaim. In support of the motion, Buchbinder argues that UBS failed to allege the elements of a civil RICO claim. Buchbinder offers three grounds in support of the motion to dismiss. First, Buchbinder claims that UBS impermissibly alleged that the RICO "enterprise" and the RICO Counter–Defendants are identical entities. Second, Buchbinder claims that UBS failed to plead with specificity the predicate acts required to establish a "pattern" of racketeering activity. Finally, Buchbinder claims that UBS failed to plead the "continuity" required to establish a "pattern" of racketeering activity. This Court grants the motion in part and denies it in part. The Court dismisses Bankcard America, Inc. as a Counter–Defendant, but leaves the rest of the Amended Counterclaim intact.

### I.

For the purposes of this motion to dismiss, we take the facts that UBS alleges in the

1. We include together the Counter–Defendants under the name "Buchbinder" for convenience. At certain parts, this memorandum opinion speaks about Samuel Buchbinder as an individual. When this is so, the context will clearly indicate it.

Amended Counterclaim as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Those facts are as follows. When a customer makes a credit card purchase from a merchant, the customer's credit card account is debited based on a communication from the processing terminal. At the end of the business day, the merchant transmits the total of his sales from the processing terminal to a data collection service. The data collection service effects a wire transfer to the merchant's account at the bank where the merchant owns a credit card sales account.

Counter–Defendant Bankcard America, Inc. ("BAI"), is a closely held Illinois corporation that provides credit transaction processing services to banks. BAI uses an assumed name, "American Bankcard Center." Counter–Defendant American Bankcard Systems, Inc., is also a closely held Illinois corporation that provides credit transaction processing services to banks. Samuel Buchbinder and Paul Alperstein are each shareholders, officers, and directors of both American Bankcard Systems, Inc. and BAI.

UBS is a New York corporation. It entered an agreement on October 8, 1991 with Buchbinder to provide marketing services as an independent sales organization ("ISO"). On behalf of Buchbinder, they were to solicit applications from merchants to open credit card sales accounts at the client bank. In return for acquiring a merchant base for the Counter–Defendants and their bank, UBS was to receive a cut of the commissions, or residuals, that each credit transaction would generate. Those residuals were to be payable to UBS in perpetuity, as long as the merchant remained with the client bank.

The Counter–Defendants had control over the timing of merchant approvals, over the distribution of processing equipment to merchants, and over the distribution of residuals to the ISOs. Whenever a new merchant would apply to open a credit card sales account at the client bank, it would remit to UBS a $95 application fee, which was then forwarded to the Counter–Defendants. Once the application was approved, the Counter–Defendants would provide the processing equipment to UBS to distribute to the approved merchant.

According to the Amended Counterclaim, Buchbinder customarily dragged out the application approval and equipment distribution times. Irate merchants awaiting their equipment and wondering where their $95 had gone would call Buchbinder to complain about poor customer service by the ISOs. Buchbinder used this as a pretext to cut off all residual payments to the ISOs. Additionally, Buchbinder placed telephone calls to the ISOs' merchants to falsely claim that the ISOs were crooked and under investigation by state and federal agencies. Some of these targeted merchants voluntarily terminated relations with the ISOs, thereby terminating their rights to even more residual payments. Without residuals, ISOs went out of business quickly for failure to pay their workforce and business expenses. To accelerate the decline of the ISO businesses, Buchbinder filed peremptory declaratory judgment actions on the ISO agreements. This litigation typically lasted long enough for many ISOs to run out of money with which to pay their attorneys, resulting in default judgments. Also, once the ISOs were bankrupt, Buchbinder raided the ISOs' former workforce and rehired the employees as its own.

UBS claims to be one of these targeted ISOs. It has filed the instant RICO action as a counterclaim to Buchbinder's earlier filed breach of contract action in this Court. UBS alleges the above scheme constitutes conduct of an enterprise in furtherance of a pattern of racketeering activity. UBS bases the allegations of racketeering activity on alleged predicate acts of mail and wire fraud involving communications concerning the formation and termination of ISO agreements.

## II.

■ The standard governing a motion to dismiss is well established. Only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" will the motion be granted. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see generally* 5A Charles Wright & Arthur Miller, *Federal Practice and Proce-*

*dure:* Civil 2d § 1357 (2d ed. 1990). The Court assumes that all allegations are true and makes all reasonable inferences in favor of the non-moving party. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1992).

Ordinarily, Rule 12(b)(6) motions address the face of the complaint. *See Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). In this case, more than just the face of the Amended Counterclaim is at issue. UBS has attached three exhibits to its Amended Counterclaim that it would like the Court to consider in evaluating Buchbinder's Motion to Dismiss. Exhibit A, incorporated by reference in paragraph 23, is a copy of the 1991 agreement between UBS and Buchbinder. Exhibit B, incorporated by reference in paragraph 40, is a copy of the Government's Motion for Rule to Show Cause Why Probation Should Not be Revoked, filed on April 19, 1991, in *U.S. v. Samuel Buchbinder,* 84 CR 951. Exhibit C, incorporated by reference in paragraph 40, is a copy of the transcript of the deposition of Paul Hook, taken on June 20, 1991.

█ A complaint is deemed to include documents attached to it as an exhibit or documents incorporated in it by reference. *Id.;* Fed.R.Civ.P. 10(c); 5 Wright & Miller, § 1327. Since Rule 10(c) allows a party to incorporate exhibit material by reference into the complaint, this Court considers these three exhibits to be part of UBS' Amended Counterclaim. Therefore, UBS is permitted to rely on them to show it has alleged a claim for which relief can be granted.

### III.

In Count II of its Amended Counterclaim, UBS alleges civil violations of RICO based on predicate acts of mail, wire, and bank fraud. The Racketeer Influenced and Corrupt Organizations Act ("RICO" or "Act"), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, imposes civil and criminal liability on those who engage in certain prohibited activities. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989). Among the Act's provisions is the following:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Put more succinctly, the elements of a RICO violation under section 1962(c) are 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1995). The motion to dismiss focuses on the "enterprise" and "pattern" elements. We address the arguments in turn.

### A.

The "enterprise" element of a RICO claim is defined in the Act to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Buchbinder argues that Count II of the Amended Counterclaim should be dismissed because the Counter–Defendant BAI is alleged to be identical to the enterprise which facilitated the racketeering activities, American Bankcard Center. UBS responds that while at various times the Counter–Defendants did business as American Bankcard Center, this does not mean that the act of suing Messrs. Alperstein and Buchbinder, American Bankcard Systems, Inc., and BAI, suggests that American Bankcard Center is also being sued.

█ If the enterprise alleged in a RICO claim is a legal entity, such as a corporation, the main restriction on pleading this element is that the person being sued for conducting the affairs of the enterprise through racketeering must exist separately from the enterprise. *See Richmond,* 52 F.3d at 646–47; *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The enterprise alleged by UBS is a legal entity. UBS alleg-

es American Bankcard Center to be the "enterprise" through whose affairs the Counter–Defendants conducted racketeering activity. (Amended Counterclaim, Count II, at ¶ 10). UBS also alleges that "American Bankcard Center" and "American Bankcard Center, Inc." were assumed names of Bankcard America, Inc., a corporation. (Amended Counterclaim, Count II, at ¶ 3).

The identity between this Counter–Defendant corporation and the alleged enterprise is impermissible in a RICO action. *Haroco,* 747 F.2d at 400. *See Richmond,* 52 F.3d at 648 n. 12 (citing *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 440–41 (5th Cir.) (per curiam), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987) (concluding that there was no RICO violation because plaintiffs failed to establish existence of any entity separate and apart from the defendant bank)). Therefore, this Court dismisses Bankcard America, Inc. as a Counter–Defendant because that corporation is alleged to be identical to the enterprise claimed to have facilitated the racketeering acts, American Bankcard Center. Contrary to UBS' contention, "d/b/a" or "assumed name" status does not imply that BAI and American Bankcard Center are different entities, but rather that they are the same.

The Court does not dismiss the other Counter–Defendants. UBS alleges Samuel Buchbinder and Paul Alperstein to be managers of BAI (d/b/a American Bankcard Center). When the enterprise is a corporation and the RICO person is someone managing it, the person and enterprise are distinct and separate entities. *See Richmond,* 52 F.3d at 646–47 (citing cases). Further, UBS alleges American Bankcard Systems, Inc. to be sepa-

rate from BAI (d/b/a American Bankcard Center). Nothing in the Amended Counterclaim suggests any legal identity between American Bankcard Systems, Inc. and BAI (d/b/a American Bankcard Center).

## B.

The other element of a RICO claim at issue is the "pattern of racketeering activity" element. This element is defined in the Act as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined as any act constituting one of over fifty state and federal crimes listed at 18 U.S.C. § 1961(1). Within this list is mail fraud, 18 U.S.C. § 1341,[2] wire fraud, 18 U.S.C. § 1343,[3] and bank fraud, 18 U.S.C. § 1344.[4]

In *H.J. Inc. v. Northwestern Bell,* having found that Congress failed to illuminate fully the contours of the "pattern" element of a RICO cause, the Supreme Court interpreted the requirement to include three main parts. *See H.J. Inc.,* 492 U.S. at 236, 109 S.Ct. at 2899. Above all, there must be two predicate acts of racketeering activity within a ten year period. *Id.,* 492 U.S. at 238, 109 S.Ct. at 2900. But "'proof of two acts of racketeering activity, without more, does not establish a pattern.'" *Id.* (quoting statement of Sen. McClellan, 116 Cong.Rec. 18940 (1970)). To show that the two acts form a pattern, "a plaintiff or prosecutor must show that the racketeering predicates

---

**2.** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice, ... places in any post office ..., any matter or thing whatever to be sent or delivered ... shall be fined ... or imprisoned....

**3.** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits ... by means of wire ... any

writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined ... or imprisoned....

**4.** Whoever knowingly executes ... a scheme or artifice—

(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined ... or imprisoned....

are related, and that they amount to or pose a threat of continued criminal activity." *Id.,* 492 U.S. at 239, 109 S.Ct. at 2900. Hence the three main parts of the pattern element are 1) two predicate acts of racketeering activity within a ten year period, 2) a relationship among the acts, and 3) continuity of the criminal conduct. *Id.; see Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 779 (7th Cir.1994).

### 1.

Buchbinder argues that UBS has failed to plead the circumstances of the alleged predicate acts of mail and wire fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. Buchbinder acknowledges that the Amended Counterclaim alleges telephone and mail communications between UBS and Buchbinder in September 1991, but argues that the Amended Counterclaim contains no particularized pleading of predicate acts against any other alleged victim. In response, UBS calls the information in the Amended Counterclaim and exhibits "highly detailed."

In pleading the existence of the two predicate acts to establish a pattern of racketeering activity, if those acts involve allegations of fraud, Rule 9(b) applies. Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

The formulation of the 9(b) requirement varies in the Seventh Circuit. Some cases state that the alleged *misrepresentation,* rather than the alleged *communication,* constitutes the circumstance to be pled with particularity. *E.g., Vicom,* 20 F.3d at 777; *Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344, 352 (7th Cir.1992); *Bankers Trust Co. v. Old Republic Insurance Co.,* 959 F.2d 677, 683 (7th Cir.1992). Compare 5 Wright & Miller § 1297 at n. 9 ("false representations").

While not a conflict, the two formulations might represent more than a semantic difference. This Court believes the difference, if any, finds roots in shades of variation in the underlying legal regimes making particular conduct actionable as "fraud." For instance, a violation of the mail fraud statute, 18 U.S.C. § 1341, connotes circumstances surrounding the *parcel delivered* —the communication. On the other hand, a violation of an antifraud provision of the securities laws, *e.g.,* 15 U.S.C. § 78j(b), connotes circumstances surrounding the *statement made* —the misrepresentation. While false representations form the core of all actions for fraud, the underlying legal regimes seem to encompass various levels of particularity in the "circumstances" of the fraud. No case seems to have articulated this rationale, or for that matter any rationale, for the difference in formulating the Rule 9(b) requirements. The Seventh Circuit has, however, taught that district courts should act with an awareness of the purposes justifying Rule 9(b) particularity pleading. *See Vicom,* 20 F.3d at 777 n. 4 (forcefully questioning the usual justifications of 1) protection of reputations, 2) deterrence of "strike suits," and 3) provision of fair notice to defendants).

■ When the underlying fraudulent conduct is alleged to be mail or wire fraud, this Court addresses the circumstances of the "communication" rather than those of the "misrepresentation." The first sentence of Rule 9(b) requires the pleading of circumstances *constituting* fraud. In the mail and wire fraud contexts, it does not require a plaintiff to explain in a complaint the theory of how or why a particular postal or telephonic communication was false or misleading, or was relied upon to the plaintiff's detriment. *See generally Mother Earth, Ltd. v. Strawberry Camel, Ltd.,* 72 Ill.App.3d 37, 48, 28 Ill.Dec. 226, 236, 390 N.E.2d 393, 403 (1979) (explicating the elements of common law fraud in Illinois). "Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 523 (7th Cir.1993) (bankruptcy case). In other contexts, more intricate detail might be re-

quired in a complaint concerning statements and omissions to give effect to the purposes behind Rule 9(b). *See Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993) (held particularity not met where securities fraud alleged to have overcome economic forecaster's safe harbor protection).

 Pleading the circumstances of fraud with particularity, then, requires that the plaintiff state at a minimum the time, place, and content of the alleged communications perpetrating the fraud. *See Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir.1994); *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992); *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992 (7th Cir.1991). Where mail and wire fraud are at issue, "the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Jepson,* 34 F.3d at 1328. A plaintiff should also name the method of communication used to achieve the predicate acts. *See Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir.1992).

 This Court detects at least four predicate acts pled with particularity. First, in the deposition of Paul Hook (Counter–Pl.'s Ex. C, incorporated by reference into the Amended Counterclaim, Count II, at ¶ 40), the deponent stated the circumstances of the Counter–Defendants' allegedly fraudulent termination of the contract with Merchant Services Group, another independent sales organization, in 1987. The deposition includes the date (May 28, 1987), the place (between California and Illinois), the content ("His response ... was ... if I would Federal Express him a cashier's check for that 9,000 plus dollars, he would Federal Express those [machines] to me."), the parties (Paul Hook and Samuel Buchbinder), and the method (telephone). (Counter–Pl.'s Ex. C, at 41–43). Second, the Amended Counterclaim describes a September 10, 1991, telephone call between Mr. Rothberg of UBS and Samuel Buchbinder and Paul Alperstein of American Bankcard Systems, Inc., placed between Illinois and New York, in which they discussed UBS' possible participation as an in-

dependent sales organization on behalf of Bankcard America, Inc. and American Bankcard Systems, Inc. (Amended Counterclaim, Count II, at ¶ 24). Third, the Amended Counterclaim describes a September 17, 1991, facsimile transmission placed between the New York office of Mr. Rothberg of UBS and a fax machine in Illinois, which communicated to Paul Alperstein (on his own behalf and on behalf of Samuel Buchbinder and American Bankcard Systems, Inc.) copies of the proposed independent sales organization agreement. (Amended Counterclaim, Count II, at ¶ 25). Fourth, the Amended Counterclaim describes a September 17, 1991 mailing by Samuel Buchbinder and Paul Alperstein of American Bankcard Systems, Inc. from their Illinois offices to UBS' New York offices which contained a draft copy of the proposed independent sales organization agreement. (Amended Counterclaim, Count II, at ¶ 27).

*2.*

Buchbinder also argues that UBS failed to alleged continuity of the predicate racketeering acts. Buchbinder argues that the alleged predicate acts all took place in mid-September, 1991, and thus cover too short a time to be considered continuous. UBS responds that the information from the exhibits may properly be considered in the instant motion to dismiss. The 1987 deposition of Paul Hook is one of those exhibits.

The Supreme Court in *H.J. Inc.* held that continuity is primarily a temporal concept.

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

 *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. In giving effect to Congressional concern about long-term criminal conduct, the Supreme Court identified two types of continuity under RICO. *Id.* Closed ended continuity denotes a pattern of criminal

conduct that extends over a period of time. *Id.* Open ended continuity denotes a pattern of criminal conduct that, while not lasting over a long duration, involves a distinct threat of long-term racketeering activity. *Id.*

 UBS' properly alleges closed ended continuity in its Amended Counterclaim. To analyze whether a plaintiff has alleged a closed ended continuous pattern of criminal conduct, we address the five factors set out in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). These are 1) the durational span of the predicate acts, 2) the number and variety of the predicate acts, 3) the number of victims of the predicate acts, 4) the presence of separate schemes of criminal conduct, and 5) the occurrence of distinct injuries from each predicate act. *Morgan,* 804 F.2d at 975; *see also Vicom,* 20 F.3d at 780.

The Court addresses seriatim these five *Morgan* factors. "[D]uration is the single most important aspect of the closed-ended continuity analysis...." *Id.* at 781. Contrary to what Buchbinder argues, the predicate acts in this case span over four years, not one week. A complaint alleging a durational span of predicate acts lasting less than a year might have "serious durational problems." *See id.* at 780. As this Amended Counterclaim alleges a durational span of predicate acts lasting four years, we identify no "durational problems." The number (four) and variety (mail and wire fraud) of the alleged predicate acts are not vast, but neither are they *de minimis.* For the continuity analysis this Court considers the number of alleged victims to be large because the two corporate victims of the predicate acts were unable to pay their workers' commissions as a result of the alleged scheme. UBS has alleged only one general scheme—the pretextual termination of an independent sales organization agreement and the raiding of clients, commissions, and sales force. Finally, each alleged predicate act generated cumulative, rather than distinct, injuries for its alleged victims.

Applying these *Morgan* factors to "achieve a 'natural and commonsense' result," *id.* at 780 (citations omitted), the Court finds that UBS has alleged predicate acts suggesting a long-term pattern of racketeering activity. This Court recognizes that " '[t]he Seventh Circuit ... does not look favorably on relying on many instances of mail and wire fraud to form a pattern.' " *Vicom,* 20 F.3d at 781 (quoting *Hartz v. Friedman,* 919 F.2d 469, 473 (7th Cir.1990)). The concern is that "the existence of a multiplicity of predicate acts ... may be no indication of the requisite continuity of the underlying fraudulent activity." *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986). This case does not implicate that concern. "It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.' " *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2900.

Here, the organizing principle of the alleged acts of mail and wire fraud is the predatory unlawful conduct of an ongoing business. (*See* Amended Counterclaim, Count II, at ¶ 35). "Congress ... envisioned that a pattern might be demonstrated by reference to a range of different ordering principles or relationships between predicates, within the expansive bounds set." *Id.* The number and variety of alleged predicate acts, the number of alleged victims, and most importantly the durational span of the alleged predicate acts all speak to the continuity of fraudulent business activity in contravention of the federal criminal law. If the facts of this Amended Counterclaim are true, then UBS has pleaded the operation of an insidious racket that would seem to constitute precisely what Congress envisioned when it carved out a private cause of action for the victims of racketeering activity. We therefore hold that UBS has alleged a closed ended continuous pattern of racketeering activity.[5]

---

**5.** UBS has also alleged an open ended continuous pattern—one that involves the threat of long-term criminal activity. Open ended continuity is established by showing 1) a specific threat of repetition of the conduct, 2) the predicate acts are a regular way of conducting an ongoing business, or 3) the predicates can be attributed to the defendant's operation of a long-term association that exists for criminal purposes. *See Vicom,* 20 F.3d at 782.

## CONCLUSION

For the reasons stated above, the motion to dismiss is granted in part and denied in part. Bankcard America, Inc. is dismissed as a defendant. All other allegations of the RICO claim in Count II of the Counter–Plaintiff's Amended Counterclaim survive the motion to dismiss.

UBS properly alleges that the predicate acts of mail and wire fraud are a regular way of conducting an ongoing business. (Amended Counterclaim, Count II, at ¶ 35). Therefore, in addition to alleging *closed ended* continuity, UBS also properly alleges continuity of the pattern of racketeering activity on the basis of *open ended* continuous criminal conduct.