Howard WILBUR, Plaintiff,

v.

**KEYBANK NATIONAL ASSOCIATION, and Lake City Bank, Syracuse, In., as Personal Representative of the Estate of Ernestine V. Urschel, Defendants.**

No. 3:96–CV–0146 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

April 4, 1997.

Michael A. Dvorak, Hahn Walz Knepp Dvorak and Higgins, South Bend, IN, Lisa L. McMullen, Baker & Daniels, Indianapolis, IN, William W. Knowles, D. Brandon Johnston, Knowles and Associates, Carmel, IN, for Howard Wilbur.

Jeffery A. Johnson, May Oberfell and Lorber, South Bend, IN, for KeyBank Nat. Ass'n, State Bank of Syracuse, Syracuse, IN, Ameritrust Nat. Bank, Michiana, Society Bank Indiana and Key Trust Co., of Indiana NA.

John W. VanLaere, Jones Obenchain Ford Pankow and Lewis, South Bend, IN, James R. Howard, Syracuse, IN, for Lake City Bank, Syracuse, IN.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On September 3, 1996, Defendants Key-Bank National Corporation ("KeyBank") and Lake City Bank of Syracuse, Indiana ("Lake City Bank"), acting as personal representative for the Estate of Ernestine V. Urschel, each filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Lake City Bank, in the alternative to moving for summary judgment, also filed a motion for abstention, requesting that this abstain from exercising its jurisdiction pending a final determination of a claim filed by the plaintiff, Howard Wilbur, against the Estate of Ernestine V. Urschel in the courts of the State of Indiana. Since both motions for summary judgment relate to similar issues, the court will address the merits of both motions in this memorandum and order.

## I. FACTUAL BACKGROUND

In December 1982, Emily Vance ("Vance") executed her Last Will and Testament. Through this Will, Ms. Vance created a testamentary trust which provided that her assets would be held in trust for the benefit of her daughter, Ernestine Urschel ("Urschel"), and her brother, the plaintiff, Howard Wilbur ("Wilbur"). According to the language of the trust, Urschel was to receive the income from the trust assets for her life. In addition, the trust also provided that the trustee, the State Bank of Syracuse ("State Bank"),[1] could pay Urschel amounts out of the corpus of the trust if the trustee, in its sole discretion, deemed it necessary for her maintenance and support.

Vance died in 1983. After her funeral, Wilbur went to speak with Mr. James Caskey, the president and trust officer for the State Bank. At this short meeting, Mr. Caskey allegedly informed Wilbur that the bank was not obligated to provide him with any advice or information with regard to Vance's testamentary trust while Urschel, the income beneficiary, was still living. Relying on this conversation, Wilbur did not contact the trustee to inquire about the status of his remainder interest in the Vance trust at any time during its administration.

According to the terms of Vance's Will, the State Bank administered the testamentary trust. As a result, Urschel began receiving monthly interest checks from the trust. In late 1984 and early 1985, Urschel and her attorney twice contacted the trustee, the State Bank, through Mr. Caskey, seeking additional payments from the trust.[2] In support of these requests, Urschel's attorney provided the State Bank with an itemization of Urschel's monthly expenses. When Urschel's expenses were set off against her social security check (the sole income she claimed to be receiving), she alleged a monthly shortfall of $1,288.00. Consequently, Urschel requested that the State Bank use its discretionary power to invade the corpus of the trust for her maintenance and support.

Ultimately, the State Bank approved Urschel's requests. Consequently, the trustee issued to Urschel a one-time payment of $1,500.00 in order to allow her to pay any outstanding bills. In addition, in March 1985, Urschel began receiving monthly payments of $1,200 from the trust.[3] These payments were later increased to $1,500.00 per month. By October 1988, the corpus of the trust had been exhausted due to the trustee's monthly payments to Urschel. According to the record, the State Bank did not inform Mr. Wilbur that Urschel was receiving pay-

---

1. The State Bank of Syracuse was later taken over by KeyBank National Association and, thus, Key bank is named as a defendant in this case since it is the successor-in-interest to the State Bank of Syracuse.

2. According to the record, the corpus of the trust was valued at approximately $58,000.00.

3. From the record, it is unclear whether the monthly payments of $1,200.00 were in addition to the monthly interest payments to which Urschel was already entitled, or whether the interest income from the trust was included in the new monthly payment.

ments from the corpus of the trust or that his remainder interest was terminated by the exhaustion of the trust for Urschel's benefit.

In August 1991, due to Urschel's physical condition, Lake City Bank was appointed as the conservator over Urschel's assets. In December 1991, Lake City Bank filed a report with the state court which set forth the assets owned by Urschel at the outset of the conservatorship. The conservator's report contained an itemization of the income received and expenses incurred by Urschel for the period of August 5 through October 2, 1991, and indicated that Urschel possessed a great deal of money in the form of United States Savings Bonds and other bank accounts located in Warsaw, Indiana. According to the report, the savings bonds and accounts held funds in excess of $340,000.00. The conservator's report did not list Vance's trust as an asset since it had been exhausted in 1988.

Sometime in 1991, Mr. Wilbur became aware of the existence of Urschel's conservatorship, including the fact that Urschel owned bonds and cash assets of substantial value. However, Wilbur made no inquiries of the conservator, Lake City Bank, or the trustee, the State Bank, regarding the status of his remainder interest in Vance's testamentary trust.

On June 22, 1995, Ernestine Urschel died. Her estate is being administered by Lake City Bank. At the time of her death, Urschel still possessed assets in excess of $300,000.00. Upon learning of Urschel's death, Mr. Wilbur's daughter, Lenore Shaffer, on her father's behalf, contacted KeyBank (which was now the successor-in-interest to the State Bank) to determine the status of her father's remainder interest. On August 9, 1995, Mr. George Freese, then the Senior Vice President of Key Trust Company of Indiana, sent Wilbur a letter explaining that the trust had been terminated in 1988 after the corpus had been exhausted for Urschel's benefit. This letter was the first and last communication that Wilbur received from the trustee of Vance's testamentary trust with regard to his remainder interest. Consequently, Wilbur filed a claim against the Estate of Ernestine Urschel, contending that the trust was improperly administered and that his remainder interest squandered. Mr. Wilbur's claim against the estate is still pending in the Kosciusko County Superior Court under cause number 43D01–9506–ES–22.

## II. PROCEDURAL BACKGROUND

On February 29, 1996, Mr. Wilbur, by counsel, filed the present cause of action in this court, which has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332.[4] In his complaint, Wilbur raises two claims: (1) a breach of trust claim against KeyBank, the successor-in-interest to the trustee of Vance's testamentary trust; and (2) a constructive fraud claim against Lake City Bank, the administrator of Ernestine Urschel's estate. Mr. Wilbur requests that this court impose a constructive trust upon the assets of the Estate of Ernestine Urschel in the amount of the corpus that would have been distributed to him but for Urschel's alleged fraud.

The defendants have both filed motions for summary judgment in this action.[5] Defendant Lake City Bank filed its brief in support of its motion for summary judgment September 3, 1996. In its brief, Lake City Bank argues that Wilbur filed his claim of constructive fraud outside of the six-year statute of limitations under Indiana law. In addi-

4. No argument regarding the sufficiency of diversity jurisdiction has been raised in this case. It is undisputed that the plaintiff is a citizen of the State of Michigan and that at least one of the defendants is a financial institution with its principal place of business in the State of Indiana. In addition, it is undisputed that the value of the corpus of the Vance testamentary trust is in excess of the $50,000 amount-in-controversy requirement that existed when this case was filed. It also appears that all parties agree that the law applicable in this case is that of the State of Indiana. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. It must be noted that defendant Lake City Bank initially filed a motion to dismiss or abstain on April 23, 1996. The plaintiff filed a response on May 23, 1996, to which the defendant replied on May 30, 1996. However, on June 21, 1996, this court informed the parties that Lake City Bank's motion to dismiss would be treated as a motion for summary judgment and asked the parties to brief the issues.

tion, Lake City Bank also raises the equitable defense of laches to bar the plaintiff's claim. In the alternative, Lake City Bank requests that this court abstain from exercising its jurisdiction over the plaintiff's case since Wilbur's claim against the Estate of Ernestine Urschel is still pending in the Kosciusko County Superior Court. The plaintiff responded to defendant Lake City Bank's motion for summary judgment on November 12, 1996.

Defendant KeyBank filed its motion for summary judgment on September 3, 1996, as well. KeyBank also raises the statute of limitations as a defense, arguing that the plaintiff's complaint was filed after the applicable two-year statute of limitations had run on the plaintiff's breach of trust claim. KeyBank also asserts that judgment as a matter of law should be granted in its favor under the equitable doctrine of laches. The plaintiff filed his response to KeyBank's summary judgment motion on November 12, 1996.[6] In the interests of clarity, the court will address the two motions for summary judgment individually.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56) (alteration added). The nonmoving party may not rest on its pleadings, *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet*

---

**6.** KeyBank filed a reply to the plaintiff's response on December 2, 1996. However, on December 18, 1996, the plaintiff filed an objection to KeyBank's reply, arguing that the reply brief was not timely filed under Rule 7.1(a) of the Local Rules of the United States District Court for the Northern District of Indiana. As the plaintiff asserts, Rule 7.1(a) states that with regard to motions for summary judgment, "unless the court otherwise directs, ... the moving party shall have seven (7) days after service of the answer brief in which to file a reply brief." According to the plaintiff's response, the applicable date of service of the answer brief was October 8, 1996. However, after reviewing the record, the court finds that this date must be incorrect, since the plaintiff's response was filed by the clerk on November 12, 1996. Therefore, erring on the side of caution,

the court will assume that the response was served on the date it was filed-November 12, 1996.

Applying Local Rule 7.1(a) to this reply, the court finds that November 21, 1996, would have been the date that a reply was due to be filed. Then, allowing three (3) business days for mailing pursuant to Rule 6(e) of the Federal Rules of Civil Procedure, KeyBank would have had until November 26, 1996, in which to file a timely reply to the plaintiff's response. Because KeyBank's reply was not filed until December 2, 1996, the court finds that KeyBank's reply was not timely filed. Thus, the court will not consider KeyBank's reply as it relates to its motion for summary judgment, and the plaintiff's objection is hereby sustained.

*Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may the party resisting summary judgment rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2511–14.

Although the Supreme Court later revisited the 1986 trilogy in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law, the most that can be said for *Eastman Kodak* is that it did not tinker with *Celotex* and *Anderson*, and possibly involved an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of summary Judgment Motions*, 139 F.R.D. 441 (1992).

## IV. KEYBANK'S MOTION FOR SUMMARY JUDGMENT

Defendant KeyBank filed its motion for summary judgment on September 3, 1996. In its motion, the defendant raises the statute of limitations and the equitable doctrine of laches as defenses to the plaintiff's breach of trust claim. Specifically, the defendant states that the applicable statute of limitations for a breach of trust claim under Indiana law is two years. Further, the defendant submits that the "discovery rule" applies to determine when the plaintiff's breach of trust claim accrued and the statute of limitations began to run.

On the issue of accrual, the defendant first argues that the plaintiff failed to use due diligence in discovering the breach since he failed to make any inquiries about his interest in the trust after his initial meeting with Mr. Caskey. In addition, the defendant argues that the plaintiff had knowledge that a conservatorship was established for Urschel's benefit in 1991. Thus, the defendant contends that the plaintiff should have inquired about the status of his remainder interest at that time and, consequently, through the exercise of due diligence, would have discovered the alleged breach of trust in 1991. As a result, the defendant argues that this cause of action should be deemed to have accrued in later than 1991. Thus, since the plaintiff filed his complaint in February 1996, the breach of trust claim should be deemed untimely under the applicable two-year statute of limitations. Should the court find that the cause was timely filed, the defendant also argues that the equitable doctrine of laches should be applied to the plaintiff's claim because the plaintiff unduly delayed in bringing this action after learning that Urschel's assets had been placed under a conservatorship. As a result, the defendant argues that it is entitled to judgment as a matter of law on the plaintiff's breach of trust claim.

The plaintiff filed his response to Key-Bank's motion for summary judgment on November 12, 1996. In this response, the plaintiff submits that he did not inquire about the status of his remainder interest in the trust prior to Urschel's death because he was relying on the opinion given by Mr. James Caskey during their meeting shortly after Vance's death. The plaintiff states that Mr. Caskey told him "they didn't have to give me any advice, as long as Ernestine was alive." *See* Deposition of Howard Wilbur at 27. The plaintiff argues that it was reasonable for him to rely on Caskey's statement because Caskey was the trust officer for the bank administering the trust. Therefore, applying the discovery rule, the plaintiff argues that his cause of action accrued, and the statute of limitations began to run, when he received the August 1995 letter from Mr. Freese of KeyBank that informed him of the trust's termination in 1988. Consequently, the plaintiff asserts that he did not unduly delay in filing his breach of trust claim and that the complaint in this cause was timely filed in February 1996. Thus, the plaintiff requests that the defendant's summary judgment request be denied.

## A. STATUTE OF LIMITATIONS

It is undisputed that the statute of limitations applicable to the plaintiff's breach of trust claim against defendant KeyBank is the two-year period set forth in IND. CODE § 34–1–2–2(1). *See Mack v. American Fletcher Nat'l Bank and Trust Co.*, 510 N.E.2d 725, 739 (Ind.Ct.App.1987) (holding that breach of trust claim is most analogous to injury to personal property requiring application of § 34:1–2–2(1)). Thus, it is incumbent upon the court to determine when the plaintiff's breach of trust claim accrued and when the statute of limitations began to run.

■■■ It appears that both parties concede that the court should apply the "discovery rule" in determining when the cause of action accrued in this case. Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when "the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind.1992). Thus, the court must determine when Mr. Wilbur first knew or, in the exercise of ordinary diligence, could have known that the trustee, the State Bank of Syracuse, failed to exercise its fiduciary duty to investigate Urschel's financial condition and protect his remainder interest before authorizing any payment to Urschel from the corpus of the Vance trust.

In this case, the plaintiff argues that he did not discover the alleged breach of trust until 1995, when Mr. George Freese, then the Senior Vice President of Key Trust Company of Indiana, sent him a letter that informed him, for the first time, that the trust had been exhausted in 1988 for the benefit of Urschel. The plaintiff contends that he exercised ordinary diligence by going to the State Bank immediately after Vance's funeral to inquire about his rights and responsibilities as the remainder beneficiary of his sister's testamentary trust. In his deposition, the plaintiff states that he met with Mr. James Caskey, the president and trust officer of the State Bank, for about twenty (20) minutes, discussing how his sister's estate would be disposed. *See* Deposition of Howard Wilbur at 44–48. In addition, he contends that Mr. Caskey informed him that the State Bank, as trustee, did not have to give him any advice regarding his interest in the trust as long as Urschel, the income beneficiary, was alive. *Id.* at 27. After this meeting with Mr. Caskey, the plaintiff admits that he made no further attempts to contact the State Bank in order to inquire about the status of his remainder interest in the trust until after Urschel died in 1995. *Id.* at 13.

Both defendants Lake City Bank and Key-Bank dispute the reliability of the plaintiff's version of the meeting with Mr. Caskey. However, since this case is before the court on motions for summary judgment, this court must construe the facts and draw all reasonable inferences in the light most favorable to the plaintiff. *See Smith v. Fruin, supra.* Therefore, the court must accept the plaintiff's submission that Mr. Caskey, acting on behalf of the trustee, informed him that he would not receive advice with regard to the trust until the time of Urschel's death.

Based upon such information, it is this court's view that a reasonable person in the plaintiff's position would not have discovered the breach of trust alleged in this case before the date he in fact was notified of the trust's exhaustion by KeyBank. In *Malachowski v. Bank One*, 590 N.E.2d 559 (Ind.1992), the Court of Indiana held that "the notion that the Beneficiaries were not entitled to rely upon the good faith of [the trustee], but were instead under some duty to be suspicious of [the trustee's or other beneficiary's activities] and to investigate whether [the trustee's] representations were true 'would seem to undercut the very essence of a trust relationship.'" 590 N.E.2d at 564 (quoting Judge Sullivan's opinion dissenting in part from the Court of Appeals decision below in that case, *Malachowski v. Bank One*, 570 N.E.2d 65, 69 (Ind.Ct.App.1991)). In this court's view, the entire concept of a trustee is based upon the notion that a trustee is one who can be "trusted." Thus, it would logically follow that a beneficiary should be able to rely on a trustee's advice, statement or opinion with regard to the administration of a trust.

In this case, a beneficiary, who it appears had no prior knowledge of trust law, relied

upon the statement of a trust officer. In support of its argument that the plaintiff did not use proper diligence to unearth the breach of trust claim, the defendant first argues that the plaintiff failed to make inquiries of the trustee during the time that the trust was administered. However, in this court's opinion, Wilbur's failure to make periodic inquiries of the trustee regarding his remainder interest is consistent with the opinion he received from Mr. Caskey in his initial visit-that he would not receive advice or information with regard to the trust until Urschel died.

The defendant also suggests that the breach of trust claim must have accrued as early as 1991-the time when the plaintiff gained knowledge that a conservatorship was established for Urschel's benefit. It undisputed that the plaintiff knew that a conservatorship was established for Urschel's benefit. The plaintiff even goes so far as to admit that he knew that the conservatorship contained assets such as "money in bonds and stuff." *See* Deposition of Howard Wilbur at 32.

However, in this court's opinion, to translate Mr. Wilbur's knowledge of the *existence* of the conservatorship into a duty to investigate the status of his remainder interest is unreasonable in this case. First, in his deposition, Mr. Wilbur stated that he did not even know what a "conservator" was. *Id.* at 31. Second, there is no evidence in this record to even remotely suggest that Wilbur had ever possessed or reviewed the list of assets held by Urschel's conservator, or that he had any knowledge that an itemized accounting of the estate actually existed. Mr. Wilbur admits only that he had heard that the conservatorship was established, and that Urschel possessed "money in bonds and stuff." As stated above, from his initial meeting with the trustee shortly after Vance's death until after Urschel death in 1995, Mr. Wilbur reasonably relied on Mr. Caskey's opinion that he would not receive any information or advice regarding his remainder interest until Urschel, the income beneficiary, died. Thus, without more, it is this court's view that a reasonable person in Wilbur's position would not have inquired about the status of the

trust solely because he possessed knowledge of the conservatorship's *existence.*

After reviewing the record in its totality, the court finds no evidence to establish that Mr. Wilbur had any reason to believe that his remainder interest in the trust was in jeopardy. The first notice that Wilbur received which would have caused a reasonable person under the circumstances to question the administration of the trust was the letter he received from Mr. Freese at KeyBank in August 1995, informing him that the trust no longer existed. Thus, the court finds that a reasonable person in Wilbur's position, using ordinary diligence, would not have discovered the breach of trust alleged in this case before Urschel's death in 1995. As a result, because Mr. Wilbur filed this action in February 1996, the court finds that his breach of trust claim against KeyBank was filed within the two-year statute of limitations provided by § 34-1-2-2(1). Consequently, the defendant's motion for summary judgment as it applies to the statute of limitations defense must be denied.

### B. LACHES

■ KeyBank also raises the defense of laches to defeat the plaintiff's breach of trust claim. The defendant contends that should the court find that Wilbur's complaint was timely filed, the plaintiff's undue delay in ascertaining the existence of any fraud or breach of trust and the fact that the central witness with regard to the claims is now dead should act to bar the plaintiff's claim under the equitable doctrine of laches. The plaintiff counters by arguing that he did not unduly delay in filing his claim. In addition, the plaintiff asserts that the defendant is not entitled to equitable relief in this case because the defendant does not seek equity with "clean hands." Thus, the plaintiff argues that the defendant's laches defense must fail.

■ Under Indiana law, "[t]he doctrine of laches may bar a plaintiff's claim if the defendant can show: (1) plaintiff's inexcusable delay in asserting his or her rights, (2) plaintiff's implied waiver arising from knowing acquiescence in existing conditions, and (3) prejudice to the defendant due to the

delay." *Shearer v. Pla–Boy, Inc.,* 538 N.E.2d 247, 254 (Ind.Ct.App.1989) (citations omitted). The mere passage of time is insufficient to establish laches as there must also be an unreasonable delay and prejudice to the opposing party. *Habig v. Bruning,* 613 N.E.2d 61, 65 (Ind.Ct.App.1993). "The doctrine of laches may bar a plaintiff's claim even though the applicable statute of limitations has not yet expired if the laches are of such character as to work an equitable estoppel (which contains the additional element of reliance by the defendant)." *Siddall v. City of Michigan City,* 485 N.E.2d 912, 916 (Ind. Ct.App.1985).

In this case, it is this court's view that the defendant has failed to establish the first prong of the *Shearer* test-that the plaintiff inexcusably delayed in asserting his claim. In order to establish inexcusable delay, the defendant attempts to extend Mr. Wilbur's knowledge that the conservatorship was established in 1991 into a duty to inquire whether the trust was listed as an asset by Urschel's conservator. However, in this court's opinion, this argument is not persuasive. As this court set forth above, it undisputed that the plaintiff had knowledge that a conservatorship had been established for Urschel's benefit. However, as the court also held above, it is unreasonable to translate Mr. Wilbur's knowledge of the existence of the conservatorship into a duty to investigate the status of the trust, since the record is devoid of evidence that Wilbur ever possessed or reviewed the itemized accounting of Urschel's assets prepared by the conservator. Thus, the defendant fails to overcome the plaintiff's reasonable reliance on Mr. Caskey's statement made shortly after Vance's death. As a result, the court finds that the defendant has failed to establish that Wilbur inexcusably delayed in asserting his rights in this case and, therefore, the defendant's laches defense must be dismissed. Since the court finds that the plaintiff's breach of trust claim was timely filed under the applicable statute of limitations as well as the equitable doctrine of laches, the court must deny Key-Bank's request for summary judgment.

## V. LAKE CITY BANK'S MOTION FOR SUMMARY JUDGMENT OR ABSTENTION

Defendant Lake City Bank, acting as personal representative of the Estate of Ernestine Urschel, filed its motion for summary judgment on September 3, 1996. In its motion, Lake City Bank first asserts that Wilbur's complaint is time-barred because it was filed outside the applicable statute of limitations under Indiana law. The defendant also raises a laches defense and, in the alternative, moves for abstention. The court will first address the defendant's statute of limitations defense.

### A. STATUTE OF LIMITATIONS

In support of its statute of limitations defense, the defendant acknowledges that a six-year limitations period applies to the plaintiff's constructive fraud claim. However, on the issue of when the fraud claim accrued, the defendant argues that the "perpetration rule" should apply-*i.e.,* that the statute of limitations began to run from the date that the alleged misrepresentation occurred. In addition, the defendant contends that the plaintiff may not utilize the statutory tolling exception to the "perpetration rule" set forth in IND.CODE § 34–1–2–9, because the plaintiff cannot establish that there was any concealment of the alleged fraud by Urschel or her estate. Thus, Lake City Bank argues that since the alleged misrepresentation occurred sometime prior to the trust's termination in November 1988, the date of accrual should be, at the latest, in November 1988. Thus, applying the six-year statute of limitations for fraud claims under Indiana Code § 34–1–2–1, Lake City Bank contends that the complaint filed in February 1996 was untimely, since it was filed almost eight (8) years after the trust was terminated. Consequently, the defendant asserts that it is entitled to a judgment as a matter of law on this claim.

The plaintiff counters by arguing that the accrual of a constructive fraud claim under Indiana law is governed not by the "perpetration rule", but rather by the "discovery rule"-*i.e.,* that the statute of limitations does not begin to run until the plaintiff discovers the cause of action, or from the time that the

discovery could have been made through the exercise of ordinary diligence. The plaintiff contends that he did not inquire about his interest in the Vance trust prior to Urschel's death in 1995 because he was informed by a representative of the trustee that he would not receive any advice or information with regard to the trust until Urschel, the income beneficiary, died. Thus, the plaintiff argues that he reasonably relied on the trustee's opinion and, thus, his constructive fraud claim against Lake City Bank did not accrue until he received the letter from KeyBank informing him of the trust's termination in August 1995.

Section 34-1-2-1 of the Indiana Code provides that all actions for relief against fraud shall be commenced within six years after the cause of action has accrued. *See also Shafer v. Lambie*, 667 N.E.2d 226, 229 (Ind.Ct.App.1996). In this case, it is undisputed that the six-year period of limitations set forth in § 34-1-2-1 applies to the plaintiff's constructive fraud claim. Thus, the court must first address the issue of when the constructive fraud claim against Lake City Bank accrued and the relevant statute of limitations began to run.

The Indiana Code does not define the point when a cause of action for fraud accrues-that question is one traditionally left to the courts. *See Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 564 (Ind.1992); *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 85 (Ind.1985). The defendant submits that, in Indiana, a cause of action for fraud accrues, and the statute of limitations begins to run, from the date the fraud is perpetrated. *See State v. Puckett*, 531 N.E.2d 518, 524 (Ind.Ct. App.1988); *Given v. Cappas*, 486 N.E.2d 583, 592 (Ind.Ct.App.1985); *Forth v. Forth*, 409 N.E.2d 641, 643 (Ind.Ct.App.1980). Accordingly, the defendant argues that the date of accruement for Wilbur's constructive fraud claim must be sometime prior to 1988, when the corpus of the trust was exhausted for Urschel's benefit. The defendant recognizes that § 34-1-2-9 of the Indiana Code provides: "[i]f any person liable to an action

shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action." [7] However, the defendant correctly asserts that § 34-1-2-9 does not aid the plaintiff in this case because Urschel did not conceal her alleged fraud from the plaintiff. Rather, in this case, it was the plaintiff's reliance on a statement of a third-party, the trust officer, which delayed the plaintiff's discovery of the alleged fraud.

▮ It is true that the Supreme Court of Indiana traditionally has held that a cause of action accrues, "and thus the statute of limitations begins to run, when the resultant damage of a [tortious] act is 'susceptible of ascertainment.' " *Montgomery v. Crum*, 199 Ind. 660, 161 N.E. 251, 259 (1928). However, in *Wehling*, the Supreme Court of Indiana held that the discovery rule should be applied in all tort cases to determine when the cause of action accrued. 586 N.E.2d at 842-43. In addition, it is well established that a claim for constructive fraud is a tort action. *See, e.g., Sanders v. Townsend*, 509 N.E.2d 860, 866 (Ind.App.1987). Thus, it would appear that the discovery rule should apply to the plaintiff's constructive fraud claim in this action.

It is important to note that all of the cases relied on by the defendant for applying the "perpetration rule" pre-date the Supreme Court of Indiana's decision in *Wehling*. Although, in *Wehling*, the Supreme Court of Indiana did not overrule its prior decisions relying on the "perpetration rule," *see Hinds v. McNair*, 235 Ind. 34, 129 N.E.2d 553, 560 (1955), it is quite clear to this court that the practical consequence of the *Wehling* decision is that the discovery rule now governs where the perpetration rule once applied. In addition, the tolling exception to the six-year statute of limitations for the active concealment of a fraud action by a defendant provided by § 34-1-2-9 appears to have been mooted by the blanket application of the discovery rule to all tort actions.

---

7. Section 34-1-2-9 appears to apply a variation of the discovery rule only in the limited scenario where the defendant actively conceals the mis-
representation that could be the basis of a fraud action under Indiana law.

In *Habig v. Bruning,* 613 N.E.2d 61 (Ind.Ct.App.1993), the Indiana Court of Appeals, analyzing the Supreme Court of Indiana's holding in *Wehling,* held that "the state of the law in Indiana is that a tort action accrues and the applicable statutes of limitation begin to run when the injured party knows or, in the exercise of ordinary diligence, could have known, that he or she had sustained an injury." 613 N.E.2d at 64. After *Wehling* and *Habig,* it is this court's view that the discovery rule applies when determining the date that a fraud cause of action accrues, whether or not there is active concealment of the cause of action by the defendant. In addition, the United States Court of Appeals for the Seventh Circuit has since applied the holding in *Wehling* to determine the date of accrual in two fraud cases applying Indiana law. *See Horn v. A.O. Smith Corp.,* 50 F.3d 1365, 1369 (7th Cir.1995) (applying the discovery rule for accrual of fraud action under Indiana law); *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 525 (7th Cir.1993) (Chief Circuit Judge Posner, in dicta, finding that *Wheling* holding would apply to accrual of fraud claim under Indiana law). As a result, following the state court holdings in *Habig* and *Wehling* and the decisions of the Seventh Circuit in *Horn and Midwest Commerce Banking Co.,* this court finds that the discovery rule, as articulated by the Supreme Court in *Wehling,* must be applied to this action in order to determine when Mr. Wilbur's claim against Lake City Bank accrued.

As stated above, Indiana's discovery rule provides that a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Wehling,* 586 N.E.2d at 843. As Circuit Judge Rovner explained in *Horn,* "Indiana's rule has two components-the discovery of the injury, as well as its cause." 50 F.3d at 1369. The "ordinary diligence" aspect of Indiana's discovery rule requires an objective inquiry into the facts of the case. *Id.* at 1370. Thus, the six-year statute in this case began to run when the resultant damage of the tortious act was susceptible of ascertainment by the

plaintiff. *INB Nat'l Bank v. Moran Electric Service, Inc.,* 608 N.E.2d 702, 708 (Ind.Ct. App.1993). Consequently, this court must now determine when Mr. Wilbur first knew or, in the exercise of ordinary diligence, could have known that Urschel had allegedly misrepresented her financial condition to the trustee.

As the court held above with regard to KeyBank's motion for summary judgment, the alleged fraud perpetrated by Urschel was not susceptible of ascertainment by Mr. Wilbur until he received the August 1995 letter from Mr. Freese of KeyBank. From the time of his meeting with Mr. Caskey shortly after Vance's death until his daughter's inquiry about the status of the trust after Urschel's death, Mr. Wilbur acted in reasonable reliance on Mr. Caskey's statement that he would not receive information with regard to his remainder interest while Urschel was alive. Thus, it is this court's opinion that the plaintiff's constructive fraud claim against Lake City Bank did not accrue until the time that Wilbur received the August 1995 letter from Mr. Freese at KeyBank, informing him that the trust was exhausted for Urschel's benefit in 1988. Accordingly, the court finds that the plaintiff's filing of the complaint on February 29, 1996, was timely under the six-year statute of limitations set forth in § 34–1–2–1. Consequently, the defendant's statute of limitations defense must be dismissed.

## B. LACHES

Defendant Lake City Bank, like defendant KeyBank, also raises laches as a defense in this case. However, for the same reasons set forth above in this court's analysis of KeyBank's laches defense, the court finds that Lake City Bank has failed to satisfy the three-prong test set forth in *Shearer, supra,* because, in this court's view, Wilbur did not inexcusably delay in asserting his rights in this case. Thus, the defendant's laches defense also must be dismissed.

## C. ABSTENTION

Having determined that the plaintiff's complaint is not barred by either the statute of limitations or the doctrine of lach-

es, the court must now address defendant Lake City Bank's motion for abstention. Lake City Bank contends that this court should abstain from exercising its subject matter jurisdiction in this action because the plaintiff has a similar claim against Urschel's estate that is currently pending in the Kosciusko County Superior Court.[8] The defendant claims that the state court has exclusive jurisdiction over trusts and estates, and that the state court has control over the estate's assets. Thus, the defendant argues that the court has discretion to abstain from hearing this case under the abstention doctrines set forth by the Supreme Court of the United States in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The plaintiff argues that this case is properly within this court's diversity jurisdiction and, thus, this court has a right-if not an affirmative duty-to hear the merits of the case. In addition, the plaintiff submits that there is nothing about this case that would make it uniquely within the jurisdiction of the state court. Rather, the plaintiff contends that it would present an unnecessary hardship and an inconvenience for the plaintiff to stay or dismiss this case until the state court resolves the plaintiff's claim against Urschel's estate. Therefore, the plaintiff requests that the court deny the defendant's motion for abstention.

■■■■ Federal courts possess a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. "The term 'abstention' refers to a series of doctrines by which a federal court may decline to exercise equitable jurisdiction over matters within its statutory subject matter jurisdiction." *Barichello v. McDonald*, 98 F.3d 948, 954 (7th

Cir.1996). The pendency of an action in state court is not a bar to proceedings concerning the same matter in federal court. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Only when exceptional circumstances exist may a federal court abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of a parallel state court proceeding. *Id.* at 818, 96 S.Ct. at 1246–47.

This court is no stranger to the issue of abstention. *See Starzenski v. City of Elkhart*, 842 F.Supp. 1132 (N.D.Ind.1994), *aff'd*, 87 F.3d 872 (7th Cir.1996); *Fort Wayne Community Schools v. Fort Wayne Education Association*, 735 F.Supp. 907 (N.D.Ind.1990). In this case, the court will address the defendant's request for abstention under the doctrine set forth by the Supreme Court of the United States in *Colorado River*.[9]

■■■■ The first issue that this court must address in determining whether abstention is appropriate under *Colorado River* is whether there are concurrent and parallel suits pending in both state and federal courts. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988). It is important to note that "the requirement is of parallel suits, not identical suits. A 'suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum....'" *Id.* at 1288 (quoting *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979)). The Seventh Circuit has held that issues are "sufficiently similar" when there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Construction v. Brant Construction*, 780 F.2d 691, 694 (7th Cir.1985). Without a finding of parallel proceedings, abstention is inapplicable. *Interstate Material*, 847 F.2d at 1287.

**8.** The court notes that defendant Lake City Bank is the only defendant that has moved for abstention in this case. However, since the constructive fraud and breach of trust claims raised in this case are interrelated, the court will address the motion for abstention as a motion to stay or dismiss the entire case.

**9.** It appears that Lake City Bank argues that abstention is appropriate in this case under both the *Colorado River and Younger* doctrines. However, after reviewing the record in this case, the court finds that the abstention doctrine set forth in *Younger* is not applicable. Therefore, the court will address the defendant's request for abstention only under the *Colorado River* doctrine.

After reviewing the record in this case, it is this court's view that the state and federal actions at issue are sufficiently similar to be considered parallel and concurrent proceedings. The state court cause of action involves the same plaintiff, Howard Wilbur, and one of the two defendants in this case, Lake City Bank-the representative of the Urschel's estate. It also appears that the constructive fraud claim raised by the plaintiff in this action is substantially similar to the plaintiff's claim filed against the estate in the Kosciusko County Superior Court. The only difference between the state and federal actions appears to be the plaintiff's additional breach of trust claim against KeyBank in this action. Although the naming of additional parties will not in and of itself serve to avoid the abstention doctrines, *see Lumen Construction*, 780 F.2d at 695, it is this court's view that the breach of trust claim in this case is clearly intertwined with the fraud claim. Both the plaintiff's case against the estate in the state court and the plaintiff's complaint in this action deal with the same major issue-whether Urschel defrauded the trustee in order to receive payments out of the corpus of Vance's trust to Wilbur's detriment. Therefore, the court finds that the state and federal proceedings at issue are parallel and concurrent actions. As a result, the court must address whether abstention is appropriate under the Supreme Court's holding in *Colorado River*.

Under the doctrine set forth in *Colorado River, supra,* a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote "wise judicial administration." 424 U.S. at 817, 96 S.Ct. at 1246. Since the court has determined above that the state and federal proceedings at issue are substantially similar, the court must next engage in a balancing of factors to determine whether a stay or dismissal is warranted.

Before deciding not to exercise its jurisdiction over an action that is being concurrently litigated in state court, the court must reach a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir.1992) (quoting *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47, and holding that abstention was proper when claim against estate was pending in state court). In *Lumen Construction*, 780 F.2d at 694–95, the United States Court of Appeals for the Seventh Circuit set forth ten factors that should be balanced when addressing an abstention issue under *Colorado River*:

(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir.1989).

When applying the *Colorado River* factors, no single factor is necessarily determinative. *Colorado River*, 424 at 818–19, 96 S.Ct. at 1247. The weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765. In short, the court's finding should rest not on a "mechanical checklist" of the relevant factors; rather, the foregoing factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 16, 21, 103 S.Ct. at 937, 940.

In this case, it is this court's view that several factors weigh in favor of abstention. The first factor, whether the state has assumed jurisdiction over property, weighs heavily in favor of abstention. In the state court proceeding, the court has assumed jurisdiction over the assets of Urschel's estate-the property from which the plaintiff seeks

his damages-pending a final determination of the plaintiff's claim against the estate and the distribution of the estate's assets. The fifth factor, the source of the governing law, also strongly favors abstention. This case was filed in this court under this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the merits of this case will be addressed under the law of the State of Indiana. Thus, on the fraud claim, it would be favorable to abstain from exercising jurisdiction in this case in order to allow the state court to apply state law in determining the merits of the plaintiff's constructive fraud claim. In addition, the sixth factor appears to support abstention. In the state court action, the plaintiff seeks the "return" of his remainder interest in the corpus of Vance's trust. If the state court finds in the plaintiff's favor on his fraud claim in the state court, the plaintiff's federal case would likely become moot. Therefore, in this court's view, the state court action adequately protects the plaintiff's rights.

Several factors do not weigh heavily in one direction or the other. The second factor, the convenience of the federal forum, is not really at issue here. In this court's view, the state and federal courts are equally convenient for all of the parties in this case. The fourth factor, the order in which jurisdiction was obtained by the concurrent forums, also appears to be inconsequential. Urschel died in 1995, and the plaintiff brought his claim against the estate in the state court on December 22, 1996. The complaint in this cause was filed on February 29, 1996. Therefore, the difference in the time of filing in the two jurisdictions is immaterial. The seventh, eighth, ninth and tenth factors also fail to tip the balance in either direction.

The desirability of avoiding piecemeal litigation-the third factor-appears to be the most significant factor in this case and, in this court's opinion, it is the factor that weighs most heavily in favor of abstention. As noted above, if this court were to exercise its subject matter jurisdiction in this case, then the court would be required to assess,

applying Indiana law, whether Urschel actually defrauded the trustee. That issue is very similar, if not identical to, the issue pending in the state court. The only practical difference between the federal and state actions is the breach of trust claim against the trustee, KeyBank. However, on April 24, 1996, KeyBank filed a cross-claim against Lake City Bank, the representative of Urschel's estate. Thus, it is probable that the state court's determination of the plaintiff's claim against the estate will also determine the outcome of the plaintiff's breach of trust claim in this matter.

As the Seventh Circuit held in *Lumen Construction*, "[i]n analyzing whether a dismissal or a stay will further the interest in avoiding piece-meal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." 780 F.2d at 695. In this case, if there is merit to the petitioner's fraud claim against the estate, then not only is there a substantial likelihood that the state court will dispose of all claims presented in this case, it is a virtual certainty. If the state court finds against the plaintiff and determines that Urschel did not defraud the trustee, then the constructive fraud claim against Lake City Bank will likely be subject to issue preclusion. The only remaining claim in this case would then be the plaintiff's breach of trust claim against KeyBank (and the state court's decision may effectively decide that claim as well). Additionally, if the plaintiff's prevails in his claim against the estate in the state court, then his award will effectively moot the constructive fraud and breach of trust claims in this case because he will have been compensated for the wrongs alleged here. In sum, allowing both cases to proceed would likely result in duplicative and wasteful litigation, with the strong possibility that the different forums could reach inconsistent resolutions of the same issues. [10]

In sum, when all of the factors are weighed. there are several factors which

---

**10.** The court acknowledges that "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1245. However, in this case, it is this court's view that there are more factors than merely the piecemeal litigation factor that point in favor of abstention.

point heavily towards abstention: (1) that the State has assumed jurisdiction over the assets of Urschel's estate; (2) that the law applicable to the plaintiff's claims is the law of the State of Indiana and that no federal claims are presented in this case; (3) that the state court's determination will likely be adequate to protect the plaintiff's rights; and (4) that a stay will likely avoid the possibility of piecemeal litigation. On the other hand, it appears that there is not a single factor which weighs significantly against abstention in this case. Accordingly, the court now finds that abstention of its subject matter jurisdiction is appropriate under the *Colorado River* doctrine.

■ The sole remaining question is whether this court should stay the proceedings pending a final determination of the state court case or whether this cause should be dismissed. It is well settled in this circuit that a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* abstention doctrine. *See, e.g., Selmon v. Portsmouth Drive Condominium Assoc.,* 89 F.3d 406, 409 (7th Cir.1996); *Rogers v. Desiderio,* 58 F.3d 299, 302 (7th Cir.1995); *LaDuke,* 879 F.2d at 1561–62; *Lumen Construction,* 780 F.2d at 697–98 (7th Cir.1985). Further, should the state court not conclusively determine all of the issues in the state court, only a stay ensures that the federal court will exercise its jurisdiction. *See Lumen Construction,* 780 F.2d at 698. Accordingly, due to the exceptional circumstances of this case, the court now grants defendant Lake City Bank's motion for abstention and orders all activity in this cause of action stayed until such time as the Kosciusko County Superior Court enters a final order on the plaintiff's claim against the Estate of Ernestine Urschel.

## VI. CONCLUSION

For the foregoing reasons, the court now **DENIES** defendant KeyBank's motion for summary judgment; **DENIES** defendant Lake City Bank's motion for summary judgment; and **GRANTS** defendant Lake City Bank's motion for abstention. Thus, **IT IS**

**NOW ORDERED** that all activity in this cause of action be **STAYED** until such time as the Estate of Ernestine V. Urschel, cause number 43D01–9506–ES–22, is closed and a final order is entered by the Kosciusko County Superior Court. **IT IS SO ORDERED.**